F. M. PEYTON ET AL. *v.* JAS. K. VARDAMAN.

[60 South. 129]

INJUNCTION. *Purpose of writ. Depositions.*

It is not within the judicial power of a chancellor to grant an injunction to restrain parties to a suit in equity from exercising the statutory privilege of taking depositions in support of an original bill of complaint, where there is no allegation in the bill of complaint indicating that an irreparable injury will result therefrom, even if the original bill of complaint showed no cause of action.

APPEAL from the chancery court of Hinds county.

HON. G. G. LYELL, chancellor.

Suit by James K. Vardaman against F. M. Peyton and others. From a judgment dissolving an injunction

in part and allowing defendant's counsel attorney fees, defendants appeal and complainant files a cross-appeal.

In November, 1911, the state of Mississippi, through the attorney-general, instituted suit in the chancery court against James K. Vardaman, a former governor of the state, by which it is sought to recover certain balances alleged to be due the state out of funds coming into the hands of the defendant as trust funds while he was governor of the state, and which the bill charges were converted to his own use and not properly accounted for. Said funds consisted of the executive contingent fund and various other funds, and discovery is asked in the bill to ascertain the amounts. Among other items charged in the bill were certain overcharges for interest on two certain loans procured by the defendant, while governor, through banking institutions of the city of Jackson, who were made parties defendant to the bill; it being alleged that a greater amount of interest was charged against the state than was permitted by the act authorizing a governor to procure loans. After suit had been filed, and process served upon the defendant, notice was given the defendant, under section 1937 of the Code of 1906, that depositions of certain witnesses would be taken by complainant on a day named in said notice before F. M. Peyton, a notary public, as commissioner. Thereupon defendant Vardaman instituted a separate proceeding in the nature of an injunction, seeking to enjoin attorneys for the state and the commissioner from proceeding to take testimony on the date named in the notice, towit, December 12, 1911, on the ground that the courts were without jurisdiction of the subject-matter, and defendant could not be forced to an accounting through the courts; the legislature being the proper forum to pass upon his report of funds intrusted to him as governor.

On the hearing the defendants in the second suit, appellants here, moved to dissolve the temporary injunc-

tion.    The court dissolved the injunction so far as it applied to the taking of testimony concerning the over-charge of interest made by the banks on the loans pro-cured by said Vardaman, but made perpetual the injunc-tion in so far as taking the testimony concerning the accounting for the several trust funds sought to be in-quired into by the original suit.    The chancellor, in his decree, allowed the defendant $150 attorney's fees for resisting the injunction suit.    The defendants appealed from the decree making the injunction perpetual, in so far as it applied to the several trust funds.    The com-plainant filed a cross-appeal from that part of the decree charging him with attorney's fees.    In the meantime, the incoming attorney-general, who took oath of office on January 15, 1912, dismissed the original suit filed by the state for an accounting, so that the appeal only goes to the merits of the injunction suit.    After the affirm-ance of this case by the supreme court counsel for appel-lants filed a motion to correct the decree and tax cross-complainants with the costs, and to allow additional attorney's fees for prosecuting the appeal to the supreme court.

*Wells & Wells*, for appellants.

The injunction should have been dissolved on the face of the bill.    Admitting as true all it alleges and without reference to the question of parties and procedure, it shows no ground of relief.    It is a cardinal and unvary-ing rule that an injunction bill cannot be sustained un-less the complainant distinctly and clearly shows that he has no other remedy.    This principle is so elementary and so firmly established in this state that we deem it unnecessary to cite authorities in support of it.    But see *Harvester Co.* v. *Still*, 98 Miss. 127; *Brooks* v. *Shelton*, 47 Miss. 243.

In the very nature of things there is and never has been any irreparable injury done the complainant.    Tak-

ing as absolutely true everything he alleges, the most that can be said is that these are things that might in part constitute an answer to the bill of the state.

*Easterling, Potter & Greaves,* for cross-appellant.

We contend that it is elementary from the very "nature of the organization" of the court and essential to its existence and protection and to the due administration of justice that every court has necessarily the power to control its own procedure, including the taking of depositions to be used in the trial of causes before the court.

Section 1937 provides that upon service of process depositions can be taken, and section 1927 of the Code provides that such depositions may be taken on ten days' notice, but, of course, where good cause is shown it is within the discretionary powers of the court in the control of its own procedure, and in order to prevent grave injustice from being used as an instrument of oppression, to extend the time for the taking of depositions.

Can it be possible that although a bill may be wholly insufficient, without equity, fishing in its nature, and concerning matters and parties over which the court has no jurisdiction, can be filed, and although the character of the bill is brought to the notice of the court, that the court has no power to postpone the taking of depositions until the issues are determined? Can it be that the court has no power to arrest the taking of expensive and annoying depositions when it is shown that the case may be disposed of without the necessity of depositions?

No better example of the necessity of the court to possess such power can be found than in the present case. For it is set up in the bill in this case that the court had no jurisdiction over the subject-matter of the contingent fund, because the legislature had jurisdiction of that

.matter, at least until it should order a suit brought. It is elementary that the chancery court in the original suit filed had no jurisdiction over the subject-matter of the Regan fund, or other funds raised by private subscriptions, for the state had no interest whatever .in these funds and the parties who made the donation were not parties to the suit. Surely if no other ground was well taken this one was. Then, can it be contended that it was not within the inherent power of the court to prevent its process from being abused by inquiring into the matters over which, it must be conceded, that the party, complainant, had no concern. It is too elementary to argue that the chancellor has power to postpone the taking of depositions in a case where it is shown that such depositions are in. all probability useless, expensive and made in matters over which the court has no jurisdiction.

*Watkins & Watkins,* for appellee.

. It being admitted that the state had no jurisdiction to entertain and to try the controversies .set out in the original bill between the state of Mississippi and James K. Vardaman, what right had the chancellor, before .whom the case was pending, to protect a litigant against the needless expense, annoyance and worry of taking .depositions about a matter over which the court had no jurisdiction. In other words, we find the state of Mississippi proceeding to take depositions, to prove the averments contained in the original bill of complaint, of forty pages in length, reviewing the entire official life of the appellee; it further appearing to the court that these matters were matters over which the court had no jurisdiction, or probably had none, what was the right of the chancellor in the premises to control his own commissioner and protect a litigant from an abuse of process? We will do the opposing counsel the fairness to state that .they do not question the right of a court, by what they

call a stay order in the present case to restrain a com-
missioner or other officer to proceed in such way, but
they say that in this case the proceedings were taken
by way of independent proceedings. They frankly
admitted in the lower court that the court below would
have had a perfect right to make a stay order by motion
or petition in the original case, even without bond, to
which the court below replied that if he had that right,
then, the mere fact that he required the proceedings
to take the form of independent proceedings, and re-
quired bond to protect the appellant from damages,
then he could see no substantial difference, and we con-
fess that we can see none. And it will be noted that in
the transcript on page 79 we moved the court below
to consolidate the two cases, which motion was not acted
upon, but the same results were reached as if the causes
had been consolidated. However, independently of the
concession of counsel, which we have referred to, the
court below had the following authorities:

*Anthony & Co.*, 58 N. Y. Sup. 909, in which the follow-
ing language was used:

"It was said in *Bank* v. *Sheehan*, 101 N. Y. 176, 4
N. E. 333, that while section 870 and 876 of the Code of
Civil Procedure authorizes the granting of an order
before an action has actually been commenced, for the
examination of a person against whom such an action
is about to be brought, yet the cases are rare when jus-
tice will be promoted by granting it; 'and the practice,
unless carefully guarded, may lead to great abuses.'
Here the applicant has not stated a single fact tending
to show that it has a cause of action against the manu-
facturing company. It has stated facts tending to show
a cause of action against the individuals with whom it
contracted, and also against the plate company, which
assumed that contract. So far as these persons and
this corporation are concerned, it needs no explanation
to enable it to frame its complaint. So far, however, as

the manufacturing company is concerned, it states only
its suspicions, or facts indicating the mere possibility
of a cause of action.   As to this latter company, it seeks
the examination, not to enable it to frame its complaint,
but to ascertain whether it has any cause of complaint.
It is well settled that this cannot be done; either before
or after the commencement of an action." As well as
the following authorities: *Wadley* v. *Blunt*, 65 Fed.
674; *Staunton* v. *Emery*, 46 Conn. 600; *Water Co.* v.
v. *Ins. Co.*, 36 N. J. Eq. 586; *Semple* v. *R. R. Co.*, 172
Pa. St. 382; *Music Hall* v. *Music Hall*, 100 Ill. App.
278; *Elder* v. *Prussing*, 101 Ill. App. 655. .

These authorities in effect hold that for every wrong
there is a remedy; and that while a litigant may be en-
titled to resort to the different processes provided by law
for the enforcement of his or her right, any abuse of
these processes will be protected by appropriate means
in the way of injunctions, restraining orders and stay
orders.   The court held below, and we submit properly,
in view of the fact that he was of the. opinion that the
original cause of action dealt with a matter over which
his court had no jurisdiction, and that motions, de-
murrers and pleas had been filed in the proceedings in
reference to these jurisdictional questions, he had a right
to stay the taking of depositions pending a hearing on
these preliminary matters, which he did, and we sub-
mit that he was perfectly right.

COOK, J., delivered the opinion of the court.

Without stating the details of the theory adopted
by the parties to the suit out of which the present litiga-
tion grows, it is only necessary to say that a bill of com-
plaint was filed in the chancery court of Hinds county
by which the state of Mississippi prayed for certain
relief against appellee.   No demurrer was interposed,
and no answer was made to the bill.   The state had
served notice on appellee, defendant in the bill, that at

a certain time and place and before an officer named it would proceed to take depositions to support the allegations of its complaint. Thereupon appellee filed a bill in the same court, praying for the issuance of an injunction against the attorneys of complainant, the state, to restrain them from taking depositions. The chancellor granted the prayer of the bill, and the writ of injunction was served on the attorneys and the notary public before whom the depositions were to be taken. A motion was made to dissolve this injunction, which motion was in part sustained by the chancellor, and a decree was entered by the court against appellee and the sureties on his injunction bond for attorney's fees in the sum of one hundred and fifty dollars, by way of damages for the wrongful suing out of the injunction. Defendants and complainant appealed from this decree.

It is the contention of complainant that the motion to dissolve should have been overruled. Was it within the judicial powers of the chancellor to grant the injunction to restrain parties to a suit in equity from exercising the statutory privilege of taking depositions in support of the allegations of the original bill of complaint? We can find no authority for the exercise of this power. The writ of injunction is granted upon the theory that it is necessary to prevent irreparable injury to the complaining party. There was no allegation in the bill of complaint indicating that such injury would result from taking depositions as evidence in the pending case against appellee. It is contended that the averments of the bill filed by the state, if taken as true, nevertheless failed to show any cause of action against appellee. This question cannot be considered by this court, nor could the chancellor have considered it in granting the injunction in the present case. That issue could have been raised by a demurrer, and we have been unable to find any warrant for testing the question by filing an original bill setting up matters *aliunde* the record.

No argument is necessary to demonstrate that the procedure adopted in the present case would, if approved, lead to much confusion of rights and remedies, and make possible the trial of innumerable issues by collateral proceedings, which issues are directly presented by the original action and are the precise questions which the court must decide in reaching a conclusion as to the rights of the parties to the lawsuit. The chancellor, we think, should have sustained the motion to dissolve the injunction as a whole, and as the evidence in support of the claim for damages resulting from the wrongful suing out of the injunction is not made a part of the record, we cannot say that the amount decreed as attorney's fees does not fully compensate defendants. In other words, while we think the bill was not maintainable in any view of the case, yet we think the result reached by sustaining the motion to dissolve in part probably accomplished substantial justice.

*Affirmed on appeal and cross-appeal.*

### ON MOTION TO AMEND DECREE.

PER CURIAM. It appearing that the original suit out of which grew the present case has been dismissed, and therefore it would be futile to remand this cause for further proceedings, the case was affirmed on appeal and cross-appeal. It further appearing that a judgment has been entered taxing appellant with the costs of appeal, it is ordered that the judgment shall be changed, so as to tax cross-appellant with the costs, and also to allow five per cent damages to appellant.

Motion to allow attorney's fees on appeal is overruled.